STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. WILLIAM EDWARD YOUNG, DEFENDANT-RESPONDENT.

Argued March 10, 1981—Decided July 21, 1981.

*Lorane L. Posner*, Deputy Attorney General, argued the cause for appellant (*John J. Degnan*, Attorney General of New Jersey, attorney).

*Salvatore T. Alfano* argued the cause for respondent (*Miles Feinstein*, attorney).

The opinion of the Court was delivered by

PASHMAN, J.

At issue in this case is the legality under the Fourth Amendment of the federal Constitution and Article 1, paragraph 7 of the New Jersey Constitution of a roadside search of a suitcase taken from defendant's car. Defendant was stopped by State Police for erratic driving and eventually placed under arrest. Subsequently, the police searched his car and a locked suitcase lying on the back seat. Inside the suitcase they found two bags of cocaine.

In *United States v. Chadwick*, 433 *U.S.* 1, 97 *S.Ct.* 2476, 53 *L.Ed.*2d 538 (1977), and *Arkansas v. Sanders*, 442 *U.S.* 753, 99 *S.Ct.* 2586, 61 *L.Ed.*2d 235 (1979), the United States Supreme Court held generally that absent exigent circumstances police could not, consistently with the Fourth Amendment, conduct a warrantless search of luggage found in an automobile. The State contends, however, that *Chadwick* and *Sanders* should not be applied retroactively to invalidate this search, which occurred before the dates of those decisions. We agree with the State's contention. Furthermore, unlike in *State v. Patino*, 83 *N.J.* 1 (1980), we find that the circumstances in this case gave the police adequate probable cause to conduct the search. Accordingly, the search was legal at the time it occurred and the evidence derived therefrom need not have been suppressed.

## I

On the afternoon of January 5, 1977 a State trooper observed a 1975 Chevrolet with Ohio license plates traveling at an un-

usually slow speed on Route 3 in Clifton. The trooper stopped the automobile to investigate the reason for the abnormal driving and to check the driver's license and registration. Defendant, the only occupant of the car, informed the trooper that the car did not belong to him. He displayed an Ohio driver's license and proceeded to look in the glove compartment for the registration of the car.

At this time, the trooper moved to the passenger side of the car and peered inside. He noticed what he believed to be a partially consumed marijuana cigarette in plain view on the floor of the passenger side. He also noticed a New Jersey driver's license in the glove compartment, which upon further inspection turned out to be blank. The trooper then called for additional help and arrested defendant for possession of marijuana and a counterfeit driver's license.

Upon his arrest, defendant stepped out of the car carrying an overnight bag. The trooper patted down the defendant's clothing, discovering $9,700 in cash inside a pocket, and searched the overnight bag, finding various pills.[1] He continued to search the whole car and discovered a leather suitcase on the back seat. Upon inquiry, defendant denied ownership or knowledge of the suitcase.

A second State trooper then arrived at the scene to assist in the arrest. He proceeded to search the car again, still without a warrant, and removed the suitcase from the back seat. Finding it locked with a combination lock, he nevertheless tried a succession of three-number combinations until he hit upon the right number and opened the suitcase. Inside he found a woman's purse and, looking further inside the purse, he found two bags of white powder later identified as cocaine.

---

[1]This search is not at issue on this appeal and, at least arguably, was valid as a warrantless search incident to arrest. Also not in issue are whether the trooper acted constitutionally in stopping defendant's car and in placing defendant under arrest. The constitutionality of the search of the suitcase taken from the back seat must therefore be determined without regard to whether any earlier constitutional violation tainted the search.

Defendant was indicted for possession of cocaine and desoxyn (count one) and possession of cocaine with intent to distribute (count two). He made a pretrial motion to suppress the State's use of the cocaine against him on the ground that it was the product of an illegal warrantless search. The trial court denied the motion. Subsequently, defendant pleaded guilty to count two of the indictment pursuant to a plea bargain. The other count and several disorderly person charges were dismissed. The trial court sentenced defendant to ten to twelve years in State Prison for the conviction on possession of cocaine with intent to distribute.

On appeal, the Appellate Division reversed the trial court's judgment entered on the denial of the motion to suppress and vacated the conviction and guilty plea. The reversal was based on the Supreme Court decisions in *United States v. Chadwick, supra*, and *Arkansas v. Sanders, supra*.

We granted the State's petition for certification and summarily remanded to the Appellate Division for reconsideration of the issue whether *Chadwick* and *Sanders* should be applied retroactively to this case in light of our decision in *State v. Howery*, 80 *N.J.* 563, *cert.* den., 444 *U.S.* 994, 100 *S.Ct.* 527, 62 *L.Ed.2d* 424 (1979). 82 *N.J.* 296 (1980).

After reconsideration the Appellate Division affirmed its earlier judgment suppressing the cocaine and vacating the conviction. The majority of the panel held that *Chadwick* and *Sanders* present no issue concerning retroactivity because the two cases did not establish a new constitutional doctrine. Therefore, the majority again applied the holdings of the two cases to the facts of this case and found the search unconstitutional. Additionally, the majority concluded without discussion that the search violated the holding of our recent decision in *State v. Patino, supra*.

One judge dissented, believing that *Chadwickk* and *Sanders* should not be applied retroactively to searches that occurred before the date of those decisions. He also concluded that the search in this case did not violate our holding in *Patino*. The

present appeal therefore comes before us as of right because of the dissent in the Appellate Division. *R.* 2:2–1(a)(2).

## II

We consider first whether *Chadwick, supra,* and *Sanders, supra,* should apply retroactively to a search that occurred before the date of those decisions. The State contends that those cases announced a new constitutional doctrine that should not be applied retroactively to this search. The majority in the Appellate Division disagreed, believing that *Chadwick* and *Sanders* were simply applications of established Fourth Amendment doctrine to particular facts. We think the State is correct.

■ The date relevant to this retroactivity issue is June 21, 1977, the date of the *Chadwick* decision. In *Chadwick* the Supreme Court invalidated a warrantless search of a footlocker placed, moments before its seizure by federal agents, in the trunk of an automobile parked outside a railroad station. Two years later, in *Sanders,* the Court invalidated the warrantless search of a suitcase taken from the trunk of a taxi after it had moved only a short distance from the airport where defendant had begun the ride. These two cases are based upon the same constitutional doctrine. If *Chadwick* announced a new Fourth Amendment rule, *Sanders* applied that same rule to slightly different facts. Therefore, *Sanders* by itself does not raise a retroactivity problem since it did not establish a new rule. *See State v. Burstein,* 85 *N.J.* 394, 403 (1981). *Cf. United States v. Dien,* 609 *F.*2d 1038, 1046 (2d Cir. 1979) (retroactive application of *Sanders* to search occurring before *Sanders* but after *Chadwick*); *United States v. Meier,* 602 *F.*2d 253 (10th Cir. 1979) (same).[2] We need consider only whether *Chadwick* announced a new constitutional doctrine and, if so, whether that new doctrine should be applied retroactively to prior searches.

---

[2]To the extent that *State v. Kahlon,* 172 *N.J.Super.* 331 (App.Div.1980), treated *Sanders* as a separate, new constitutional doctrine, we disapprove of that decision.

■ Despite the sharp disagreements reflected in this Court's recent decisions on the issue of retroactivity in the criminal context, the law of this State has been established by *State v. Burstein, supra; State v. Carpentieri,* 82 *N.J.* 546 (1980) and *State v. Howery, supra.*[3] under those decisions, *Chadwick* must be considered a new constitutional rule. While no previous case or statute before *Chadwick* specifically authorized the search of luggage taken from a car, several decisions did give the police a broad scope of authorization to conduct warrantless searches of automobiles stopped on the highway and of items found within them. *See State v. Waltz,* 61 *N.J.* 83 (1972); *State v. Gray,* 59 *N.J.* 563 (1971); *see also Cady v. Dombrowski,* 413 *U.S.* 433, 93 *S.Ct.* 2523, 37 *L.Ed.2d* 706 (1973); *United States v. Tramunti,* 513 *F.*2d 1087 (2d Cir.), *cert.* den. 423 *U.S.* 832, 96 *S.Ct.* 54, 46 *L.Ed.2d* 50 (1975). Since *Chadwick* reduced the scope of permissible warrantless searches and marked a departure from the direction of prior cases, it presents a retroactivity issue that must be resolved.

The test for retroactivity, fully elaborated in *State v. Nash,* 64 *N.J.* 464, 471 (1974), was most recently stated in *State v. Burstein, supra*:

> In deciding whether to apply a new rule of law retroactively, three factors must be considered: (1) the purpose of the new rule and whether it would be furthered by retroactive application; (2) the reliance placed on the old rule by those charged with administering it; and (3) the effect that retroactive application would have on the administration of justice. [85 *N.J.* at 406]

■ The application of this test as favored by a majority of this Court and explained in detail in *Burstein, Carpentieri* and *Howery* requires that the rule of *Chadwick* and *Sanders* invalidate only searches that occurred after June 21, 1977, the date of the *Chadwick* decision. Those charged with enforcing our crimi-

---

[3]While the views of individual members of the Court, including the writer of this opinion, have not changed, *see State v. Burstein, supra,* (Pashman, J., dissenting); *State v. Catania,* 85 *N.J.* 418 (1981) (Pashman, J., concurring and dissenting in part); *State v. Patino, supra,* 83 *N.J.* at 16 n.1 (Pashman, J., concurring), we need not revive the same controversy with every case.

nal laws could have reasonably relied on the pre-*Chadwick* rule recognizing the search of all items found within a car as part of the automobile exception to the warrant requirement. Furthermore, limited retroactive application of the *Chadwick* rule to cases not yet tried or pending direct review has been viewed by some as burdening the administration of justice. The deciding factor in the retroactivity analysis, however, is the purpose of the new rule. As an extension of the exclusionary rule, the predominant purpose of the new rule is to deter illegal police conduct. Since this deterrence purpose will not be appreciably advanced by retroactive application to police conduct that has already occurred, the new rule will be given prospective effect only.

The federal courts have generally reached the same conclusion. *See United States v. Calandrella*, 605 *F.*2d 236 (6th Cir.), *cert.* den., 444 *U.S.* 991, 100 *S.Ct.* 522, 62 *L.Ed.*2d 420 (1979); *United States v. Stewart*, 595 *F.*2d 500 (9th Cir. 1979); *United States v. Berry*, 571 *F.*2d 2 (7th Cir.), *cert.* den., 439 *U.S.* 840, 99 *S.Ct.* 129, 58 *L.Ed.*2d 138 (1978); *United States v. Reda*, 563 *F.*2d 510 (2d Cir. 1977), *cert.* den., 435 *U.S.* 973, 98 *S.Ct.* 1617, 56 *L.Ed.* 2d 65 (1978); *United States v. Montgomery*, 558 *F.*2d 311 (5th Cir. 1977). *But see United States v. Schleis*, 582 *F.*2d 1166 (8th Cir. 1978) (holding that *Chadwick* did not establish a new constitutional rule).

The search in this case occurred several months before the *Chadwick* decision. Therefore, *Chadwick* does not apply and the evidence obtained from the search need not be suppressed unless a separate ground exists for its exclusion.

### III

A warrantless search is *prima facie* invalid unless it comes within one of the specific exceptions to the warrant requirement of the Fourth Amendment or *N.J.Const.* (1947), Art. I, par, 7. *State v. Welsh*, 84 *N.J.* 346, 352 (1980); *State v. Patino, supra*, 83 *N.J.* at 7; *State v. Ercolano*, 79 *N.J.* 25, 42

(1979); *State v. Sims,* 75 *N.J.* 337, 351 (1978); *State v. De Lorenzo,* 166 *N.J.Super.* 483, 487–88 (App.Div.1979); *see Katz v. United States,* 389 *U.S.* 347, 357, 88 *S.Ct.* 507, 514, 19 *L.Ed.2d* 576 (1967). It is the State's burden to prove that a particular warrantless search was justified by one of the exceptions. *State v. Sims, supra,* 75 *N.J.* at 352.

The State has not attempted to fit the search of the suitcase in this case within the exception for warrantless searches incident to arrest. We note that the recent decision of the United States Supreme Court in *New York v. Belton,* —— *U.S.* ——, 101 *S.Ct.* 2860, 68 *L.Ed.2d* —— (1981), decided after oral argument in this case, may apply to these facts. There the court held that, as incident to a lawful arrest, the police could conduct a warrantless search of any items or containers found within the interior of an automobile occupied by the suspect at the time of the arrest. *Id.* —— *U.S.* at ——, 101 *S.Ct.* at 2862. Because the issue of search incident to arrest has not been argued, we decline to decide it here. Instead, we consider only whether the warrantless search was justified as within the automobile exception, as understood before *Chadwick* and *Sanders.* *See, e. g., Chambers v. Maroney,* 399 *U.S.* 42, 90 *S.Ct.* 1975, 26 *L.Ed.2d* 419 (1970); *State v. Waltz, supra.*

A minimal constitutional requirement for most government searches, whether with or without a warrant, is that the police have probable cause to suspect that a crime has been or is being committed.[4] *State v. Patino, supra,* 83 *N.J.* at 10; *State*

---

[4]The few exceptions to the probable cause requirement, such as a "stop and frisk" for the protection of an officer, *see Terry v. Ohio,* 392 *U.S.* 1, 88 *S.Ct.* 1868, 20 *L.Ed.2d* 889 (1968), or a proper inventory search of an impounded vehicle for care-taking purposes, *see South Dakota v. Opperman,* 428 *U.S.* 364, 96 *S.Ct.* 3092, 49 *L.Ed.2d* 1000 (1976); *State v. Mangold,* 82 *N.J.* 575 (1980), are not applicable to situations such as the present one where the police are searching for evidence of a crime.

Where a search is conducted as incident to a lawful arrest, the probable cause for the arrest is sufficient to justify the search of the suspect's person and immediate vicinity. *See New York v. Belton, supra,* —— *U.S.* at ——,

*v. Waltz, supra,* 61 *N.J.* at 87; 1 W. LaFave, *Search and Seizure* § 3.1 at 440 (1978). The probable cause requirement cannot be dispensed with even if a search falls within one of the exceptions to the warrant requirement.

Last term in *State v. Patino, supra,* we held that a police officer had no probable cause to search the trunk of an automobile stopped on the highway simply because he found a small amount of marijuana in the interior. 83 *N.J.* at 14–15. This holding was based on the principle that a search must be reasonable not only in its inception but also in its scope. *Id.* at 10–11; *see State v. Hayburn,* 171 *N.J.Super.* 390 (App.Div.1979), certif. den., 84 *N.J.* 397 (1980); *State v. Murray,* 151 *N.J.Super.* 300 (App.Div.1977); *State v. Scanlon,* 84 *N.J.Super.* 427 (App. Div.1964); *State v. Astalos,* 160 *N.J.Super.* 407 (Law Div.1978). Upon discovery of a small container of marijuana in the passenger area, the officer could reasonably conclude that the occupants had committed a possession offense. He could not conclude, without more, that they were carrying larger amounts of contraband in the trunk. 83 *N.J.* at 12–13.

 The Appellate Division panel in this case disagreed on the issue of whether the search of the suitcase was in violation of our holding in *Patino.* Under the facts presented by *Patino,* the police could not have conducted a proper search of the trunk even if they had applied for a warrant. Probable cause is a requisite for obtaining a warrant, but in *Patino* we held that the policeman's observations did not constitute probable cause. In this case, the State troopers had information aside from defendant's mere possession of a small amount of marijuana. They had also found a blank driver's license in the glove compartment and various pills, some of which were believed to be controlled drugs, in defendant's overnight bag. In addition, they had found a large amount of cash in defendant's pocket and were

---

101 *S.Ct.* at 2863; *United States v. Robinson,* 414 *U.S.* 218, 235, 94 *S.Ct.* 467, 477, 38 *L.Ed.2d* 427 (1973).

unable to ascertain ownership of the car because defendant could not produce the registration. Defendant's disavowal of ownership or knowledge of the suitcase increased the troopers' suspicions. All of these factors together were sufficient to suggest that other crimes were being committed and to constitute probable cause to search the car and its contents. Unlike *Patino* and similar cases, the troopers did not unreasonably extend the scope of the search to areas of the car and its contents beyond those in which their observations provided sufficient probable cause to suspect evidence of criminal activity.

Future searches, however, if not valid under *New York v. Belton, supra,* as incident to a lawful arrest, will be governed by the doctrine of *Chadwick, supra,* and *Sanders, supra.* Under that doctrine the police themselves may not make the determination whether probable cause exists for the search of luggage found in a car. One purpose of the warrant requirement is to allow a neutral magistrate to weigh the particular factors giving rise to police suspicions and to determine whether they amount to probable cause. *Chimel v. California,* 395 *U.S.* 752, 761, 89 *S.Ct.* 2034, 2039, 23 *L.Ed.2d* 685 (1969); *Katz v. United States, supra,* 389 *U.S.* at 356–57, 88 *S.Ct.* at 514; *State v. Kasabucki,* 52 *N.J.* 110, 115 (1968). In the absence of circumstances justifying an exception to the warrant requirement, the police may not legally search luggage found in a car simply on the basis of their own evaluations of probable cause. *State v. Orcutt,* 22 *Wash.App.* 730, 591 *P.2d* 872, 876 (1979).

The police can, however, seize the property suspected of containing evidence of a crime and detain it for a reasonable period while seeking a warrant. *Cf. United States v. Van Leeuwen,* 397 *U.S.* 249, 90 *S.Ct.* 1029, 25 *L.Ed.2d* 282 (1970) (customs agents could properly seize and hold mailed package for 29 hours until search warrant was obtained and executed). This procedure for investigating the contents of luggage taken from a car is suggested by the Supreme Court's reasoning in *Chadwick* and *Sanders.*

While the seizure and detention of the property is itself an intrusion into the privacy interests of the possessor or owner and must be justified by probable cause, the further search of the contents is often a much greater intrusion that should comply with the warrant requirement as well. The interests implicated in the search of a suitcase differ from those involved in automobile searches, where an on-the-spot search is arguably a "lesser" intrusion than a temporary seizure. *See Chambers v. Maroney, supra,* 399 *U.S.* at 51–52, 90 *S.Ct.* at 1981. Expectations of privacy are typically greater as to the contents of a suitcase—"a repository for personal items," *Arkansas v. Sanders, supra,* 442 *U.S.* at 764, 99 *S.Ct.* at 2593—than the contents of an automobile. We think most people would find a lesser intrusion of their privacy if the police were to seize and detain their closed baggage for some hours than to open and search it in a public place.

To summarize, *Patino* requires that the scope of a search be reasonable and that the State demonstrate probable cause as to all areas searched. Even when probable cause exists, however, the police must obtain a warrant unless the particular circumstances bring the search within an exception to the warrant requirement.

In this case, the troopers had probable cause to search the suitcase found in the back seat of defendant's car. Thus the scope of the search was not unreasonable. Furthermore, since the search occurred before the date of the *Chadwick* decision, it came within the automobile exception to the warrant requirement as understood at that time. Accordingly, the evidence obtained in that search need not have been suppressed.

The judgment of the Appellate Division is reversed and defendant's conviction is reinstated.

*For reversal and reinstatement*—Chief Justice WILENTZ, and Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER, HANDLER and POLLOCK—7.

*For affirmance*—None.